NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JERI E. MCPHAUL, | Civil Action No.: 09-3207  (JLL) |
| Plaintiff, | **OPINION** |
| v. | |
| MICHAEL J. ASTRUE, COMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**LINARES**, District Judge.

Presently before this Court is Plaintiff Jeri E. McPhaul's Appeal seeking a review of a final determination by the Administrative Law Judge ("ALJ") denying Plaintiff's application for disability insurance benefits.  The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3).  This Court has reviewed the parties' submissions in support of and opposition to the appeal and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, this Court affirms in part and reverses in part the ALJ's decision.  The Court finds that the ALJ's determination that Plaintiff's alcohol abuse was a contributing factor material to the disability is supported by substantial evidence.  The Court, however, remands with respect to the ALJ's failure to use a vocational expert at step five of the evaluation.

**I.      FACTS AND PROCEDURAL HISTORY**

Plaintiff filed a Title II application for Disability Insurance Benefits on June 23, 2003, and a Title XVI application for Supplemental Security Income payments on July 7, 2003.  Both

claims were denied initially and upon reconsideration. Plaintiff then filed a timely request for a hearing. A hearing was held on June 8, 2006. A medical expert testified at the hearing. After the hearing, Plaintiff was sent for consultative examinations, which were obtained, offered, and entered into the record as Exhibits 20F and 21F.

At the time of the hearing, Plaintiff was 49 years of age. (R. at 17.) Her past relevant work consisted of being a cashier and a customer service representative. (Id.) The record indicates that "Plaintiff has a history of alcohol abuse, liver disease, hypertension, cellulitis, asthma and a mood disorder" as well as anemia and anxiety. (Id. at 17, 270, 381, 439.) Plaintiff testified that she is single, is living temporarily with a friend, and has completed high school. (Id. at 32-33.) She asserted that she does not do most household chores, including cooking. (Id. at 43.) She testified that she tries to walk a little and sometimes gets someone to take her to the store. (Id.) Plaintiff also testified that she is unable to stand for "longer than 15 minutes at a time" and also cannot sit for long periods of time. (Id. at 33.) She stated that she suffers from back problems. (Id. at 34.) She also testified that she stopped abusing substances five to six years ago. (Id. at 41.) She stated that she suffers from tremors in her hands, experiences anxiety when she becomes nervous, has problems breathing, and takes Advair, Azanex, and Combivent. (Id. at 46-48.) Plaintiff had lasik eye surgery in 2004/2005 but states that her "eyes seem like they're getting worse[] . . . instead of better." (Id. at 43-44.)

As noted by the ALJ, Dr. Sawicki treated Plaintiff from November 2001 through August 2003. (Id. at 18.) Plaintiff was treated in November of 2001 for back pain and loss of appetite. In January of 2002, Plaintiff was treated in Rahway Hospital for approximately two weeks. (Id.) She was treated "for dehydration with renal azotemia and prolonged hypotension, bilateral pleural effusion and leg edema, etiology unclear, most likely congestive heart failure but near

normal left ventricular systolic function, chronic alcoholism and alcoholic liver disease, malnutrition, diarrhea, etiology undetermined, hypertension, and severe anemia most likely secondary to chronic alcoholism." (Id. at 18, 373.)

In April of 2002, Dr. Cholankeril diagnosed Plaintiff "with mild alcoholic cardiomyopathy and alcoholic liver disease." (Id. at 18, 355.) At Rahway Hospital in February of 2003, Plaintiff was found to suffer from normocytic anemia. (Id. at 18, 262.) An examination in March of 2003 revealed that Plaintiff suffered from "peripheral neuropathy of the thighs and congestive heart failure." (Id. at 18, 320.) She also was treated at Rahway Hospital from May 15 to May 20, 2003, for "alcohol withdrawal seizure, impending delirium tremens, acute gastritis, chronic alcoholism and alcoholic liver disease, hypomagnesemia, and chronic anemia. (Id. at 220.)

On November 25, 2003, Dr. Eric Kirschner conducted a psychological examination of Plaintiff and found that she suffered from "anxiety disorder, . . . somatoform disorder . . ., and alcohol dependence in full remission." (Id. at 18, 381.) Dr. Kirschner found that Plaintiff could "follow and understand simple directions and instructions, perform simple, rote tasks and make appropriate decisions and relate adequately with others." (Id. at 18, 380-81.)

In November of 2003, Dr. Zhang diagnosed the Plaintiff with "asthma, alcoholic liver disease, anemia, hypertension, and seizures, by history." (Id. at 386.) Dr. Zhang opined that Plaintiff "should avoid smoke, dust, or known respiratory irritants." (Id.) Dr. Zhang also stated that Plaintiff "needs to stop drinking." (Id.) In October 2004, Dr. Banayat performed an examination of Plaintiff and determined that she suffered from "mild renal insufficiency." (Id. at 438-39.) However, he also stated that he "would not be surprised if her creatine clearance would approximate close to normal function." (Id. at 439.)

In July 2005, Dr. Shah completed a State of New Jersey, Division of Family Development examination report. (Id. at 412-15.) This report indicated that Plaintiff had been treated for hypertension, chronic anemia, peripheral neuropathy, azotemia, bronchial asthma, seizure disorder, allergic rhinitis, dyslipidemia, and chronic gastritis. (Id. at 412.) Dr. Shah opined that, despite the discomfort from her ailments, Plaintiff had only a Class II orthopedic disability, meaning that she had the "functional capacity to conduct normal activities." (Id. at 413.) However, he also indicated that Plaintiff is unable to work due to disability. (Id. at 18-19, 413.)

Between May 2005 to September 2005, Plaintiff received various treatments at Rahway Hospital. In June 2005, Plaintiff was admitted to Rahway Hospital for episodes of palpitations, anxiety, and back pain. (Id. at 442.) She received treatment for "atypical chest pain, urinary tract infection, acute abdominal pain, palpitations, sinus tachycardia, uncontrolled hypertension, leukopenia, hypochromic microcytic anemia, and hypomagnesemia." (Id.) In July 2005, she received treatment for nonspecific chest pain and leg edema. (Id. at 431-34.) In August 2005, Plaintiff received treatment for lower extremity sprain, diarrhea, and abdominal pain. (Id. at 421-23.) In September 2005, Plaintiff was treated for cellulitis in both legs and pedal edema. (Id. at 466.)

At the June 8, 2006, hearing, Dr. Fechner, a medical expert, testified that Plaintiff "did not meet or equal any listing in the Listing of Impairments." (Id. at 20.) He opined that Plaintiff "could perform sedentary work with the need to avoid exposure to temperature extremes and concentrated exposure to pulmonary irritants." (Id.) Dr. Fechner noted that Plaintiff's "blood pressure was under control with medication," and "that alcohol was a big factor in [Plaintiff's] situation and that it can bring on anxiety, muscle spasm, and make hand tremors worse." (Id.)

A consultative exam by Dr. Bokhari following the hearing in September of 2006 indicated that Plaintiff suffered from "low back pain, hypertension, hypercholesterolemia, eczema, anemia, gastroesophageal reflux disease, and asthma." (Id. at 510.) Dr. Bokhari opined that Plaintiff: could occasionally lift less than 10 pounds, could stand and/or walk less than 2 hours in an 8 hour day; "must periodically alternate sitting and standing to relieve pain or discomfort;" has limitations in pulling and pushing due to low back pain; could not kneel, crouch, crawl, or stoop; could occasionally climb and balance; could reach, handle, and feel with limitations; and was limited by vibration, humidity, hazards, and fumes. (Id. at 511-14.)

A consultative mental status examination was conducted by Dr. Khoshnu in September of 2006. Dr. Khoshnu diagnosed Plaintiff with a mood disorder. (Id. at 517.) Her GAF score was 60 to 65. (Id.) Dr. Koshnu found that Plaintiff could understand, remember, and carry out short, simple instructions and make simple work decisions with only slight limitation. (Id. at 518.) He found that her ability to understand or carry out detailed instructions was more limited. (Id.)

Another post-hearing consultative examination occurred in September of 2006 by Dr. Boozan. "Dr. Boozan found that [Plaintiff] [had] excellent vision and a normal eye exam." (Id. at 19.) He "found no limitations on a residual functional capacity evaluation." (Id.)

## II.  LEGAL STANDARD

### A. Determining Disability

Pursuant to the Social Security Act, a claimant is required to show that he is disabled based on his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Taking into consideration his age, education, and work experience,

disability will be evaluated by the claimant's ability to engage in any form of substantial gainful activity existing in the national economy. Id. at § 423(d)(2)(A). If he can perform substantial gainful activity within the national economy, then he will not be considered disabled. Id. Each claimant's disability is determined individually based on evidence adduced at a hearing. See Sykes v. Apfel, 228 F.3d 259, 263 (3d Cir. 2000) (citing Heckler v. Campbell, 461 U.S. 458, 461 (1983)); 42 U.S.C. § 405(b)(1).

The Social Security Administration has developed a five-step process set forth in the Code of Federal Regulations for evaluating the legitimacy of a plaintiff's disability. 20 C.F.R. § 404.1520. At step one, the plaintiff must establish that he is not currently engaging in substantial gainful activity. Id. at § 404.1520(a)(4)(i). If the plaintiff is engaged in substantial gainful activity, the claim for disability benefits will be denied. Id.; see also Plummer v. Apfel, 186 F.3d 422, 428 (3d Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 140 (1987)). At step two, if the plaintiff is not working, he must establish that he suffers from a severe impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If the plaintiff fails to demonstrate a severe impairment, the ALJ must deny disability benefits. Id.

If the plaintiff suffers a severe impairment, step three requires the ALJ to determine, based on the medical evidence, whether the impairment matches or is equivalent to a listed impairment found in the "Listing of Impairments" located in 20 C.F.R. § 404, Subpart P, Appendix 1. Id. at 404.1520(a)(4)(iii); see also Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 118 (3d Cir. 2000). If it does, the plaintiff is automatically disabled. 20 C.F.R. § 404.1520(d). The Third Circuit has required that, in determining whether the plaintiff's impairments meet or equal any of the listed impairments, the ALJ identify relevant listed impairments, discuss the evidence, and explain his reasoning. See Burnett, 220 F.3d at 119-20.

Conclusory statements at this step of the analysis are inadequate and render the decision "beyond meaningful judicial review." Id. at 119.

If the plaintiff does not suffer from a listed severe impairment or an equivalent, the ALJ proceeds to step four. An step four, the ALJ must consider whether the plaintiff "can still do [his] past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). "This step involves three substeps: (1) the ALJ must make specific findings of fact as to the claimant's residual functional capacity; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the residual functional capacity to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work." Burnett, 220 F.3d at 120.

The plaintiff "bears the burden of proof for steps one, two and four of [the five-step] test." Sykes, 228 F.3d at 263. Neither side bears the burden of proof in step three because "step three involves a conclusive presumption based on the listings." Id. at 263 n.2 (citing Yuckert, 482 U.S. at 146-47 n.5)).

If the plaintiff cannot perform the past work, the analysis proceeds to step five. In this final step, the burden of production shifts to the Commissioner to determine whether there is any other work in the national economy that the plaintiff can perform. 20 C.F.R. §404.1520(a)(4)(v); see also Sykes, 228 F.3d at 263. In demonstrating that there is existing employment in the national economy that the plaintiff can perform, the ALJ can utilize the medical-vocational guidelines (the "grids") from Appendix 2 of the regulations, which consider age, physical ability, education and work experience. 20 C.F.R. § 404, Subpt. P, App. 2. However, when determining

the availability of jobs for plaintiffs with exertional and non-exertional impairments,[1] "the government cannot satisfy its burden under the Act by reference to the grids alone," because the grids only identify "unskilled jobs in the national economy for claimants with exertional impairments who fit the criteria of the rule at the various functional levels." Sykes, 228 F.3d at 269-70.  Instead, the Commissioner must utilize testimony of a "vocational expert or other similar evidence, such as a learned treatise," to establish whether the plaintiff's non-exertional limitations diminish his residual functional capacity and ability to perform any job in the nation. Id. at 273; see also Burnett, 220 F.3d at 126 ("A step five analysis can be quite fact specific, involving more than simply applying the Grids, including . . . testimony of a vocational expert."). If this evidence establishes that there is work that the plaintiff can perform, then he is not disabled.

    B.  Standard of Review

"Substantial evidence" is the standard of proof in disability insurance benefit cases. Substantial evidence is "more than a mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992).  The court has a duty to review the evidence in its totality and decide whether the ALJ's determination was reasonable.  See Daring v. Heckler, 727 F.2d 64, 70 (3d Cir.

---

[1] Under the Code of Federal Regulations, impairments can be either exertional or non-exertional.  Exertional impairments affect the plaintiff's "ability to meet the strength demands of jobs" in terms of "sitting, standing, walking, lifting, carrying, pushing, and pulling." 20 C.F.R. § 404.1569a.  All other impairments are considered non-exertional. Id.; see also Sykes, 228 F.3d at 263.

1984). The court gives deference to the administrative findings and decision, but it also must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and supported by substantial evidence. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978). The court, however, is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Sullivan, 970 F.2d at 1182. To assist the court in this process, an ALJ must explain the rationale behind his decision. And, where there is conflicting medical evidence, the ALJ must adequately explain in the record his reasons for rejecting competent evidence. Brewster v. Heckler, 786 F.2d 581, 585 (3d Cir. 1986). An ALJ may reject testimony of subjective complaints where it is not consistent with the medical evidence. See, e.g., Burns v. Barnhart, 312 F.3d 113, 130-31 (3d Cir. 2002).

### III. DISCUSSION

#### A. Summary of ALJ's Findings

At step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity. (R. at 23.) At step two, the ALJ concluded that Plaintiff had a severe impairment consisting of "hypertension, liver disease, history of cellulitis, history of asthma, history of alcohol abuse, and a mood disorder." (Id.) The ALJ found at step three, however, that such impairments do not meet or equal in severity any of the clinical criteria for the Listed Impairments. (Id.)

At step four, the ALJ determined that Plaintiff, without substance abuse, "had the residual functional capacity to perform work involving lifting and carrying objects weighing up to 10 pounds; sitting up to six hours, and standing and walking up to two hours in an eight-hour work day; and the full range of sedentary work involving simple tasks." (Id. at 23-24.) Based on this finding, the ALJ also found that, "[i]n the absence of substance abuse, [Plaintiff] has the residual functional capacity to perform her past relevant work as a customer service representative for H

and R Block." (Id. at 24.) However, the ALJ also found that "[c]onsidering substance abuse, [Plaintiff] has not had the residual functional capacity to perform any past relevant work." (Id.)

Finally, at step five, the ALJ concluded that, in light of the Plaintiff's extremely limited residual functional capacity due to substance abuse, there are no jobs in the national economy in significant numbers that Plaintiff has the capacity to perform. (Id.) But, the ALJ nevertheless, found that Plaintiff is not disabled within the meaning of the Social Security Act because he found that her "[s]ubstance abuse is a contributing factor material to the determination of disability." (Id.) In reaching this decision, the ALJ found that Plaintiff's "subjective complaints of disabling pain and other symptoms and limitations, in the absence of substance abuse" were not supported by the medical evidence. (Id. at 23.)

   B.   Analysis

Plaintiff argues that the ALJ erred in two respects. First, Plaintiff contends that the ALJ erred in determining whether substance abuse was a contributing factor material to the finding of disability and in placing the burden of proof for this issue on her. Second, Plaintiff argues the ALJ was required either to use a vocational expert at step five to determine the extent of Plaintiff's non-exertional disability or to adequately explain his decision for not using such an expert, which he did not do.

   1.   Alcohol Abuse as a Contributing Factor

Citing to various statements on the Commissioner's website, Plaintiff argues that the Commissioner has the burden of proof regarding whether alcohol abuse as a contributing factor is material to the disability determination. Various circuit courts have held that it is the plaintiff who bears the burden of proving that drug or alcohol abuse is not a contributing factor material to a disability. See, e.g. Parra v. Astrue, 481 F.3d 742, 748 (9th Cir. 2007) (internal quotations

omitted); Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000); Doughty v. Apfel, 245 F.3d 1274, 1280 (11th Cir. 2001); Brown v. Apfel, 192 F.3d 492, 498 (5th Cir.1999). The Ninth Circuit in Parra reasoned that placing this burden on the plaintiff "is consistent with the general rule that [a]t all times, the burden is on the claimant to establish [his] entitlement to disability insurance benefits." 481 F.3d at 748. The Parra Court further reasoned that the "claimant [also] is the party best suited to demonstrate whether [he] would still be disabled in the absence of drug or alcohol addiction." Id. This Court finds the reasoning in these decisions persuasive and agrees that a plaintiff bears the burden of proving that substance abuse is not a contributing factor material to the disability determination.

Plaintiff also argues that a non-psychiatrist is not qualified to make a determination of whether alcohol is material to a disability, and that the issue should not be decided merely by the "good faith efforts" of the ALJ. An ALJ may choose which witnesses to credit so long as a valid reason is provided. See Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir. 1993). In his decision, the ALJ addressed the opinions of the state agency physicians and noted that "[t]hey are not adequately explained and are based on minimal findings." (R. at 22.) The ALJ noted that these physicians did not have the benefit of evidence submitted after their determinations and were not afforded the opportunity to question Plaintiff and assess her credibility at the hearing. (Id.) The ALJ did not credit Plaintiff's subjective testimony that she was no longer using alcohol. The ALJ was also entitled to give Plaintiff's testimony little weight in light of the contrary medical evidence in the record.   See Burns, 312 F.3d at 130-31. In the present case, the evidence that Plaintiff continued to abuse alcohol during the relevant time period included the following:

- Dr. Cholankeril's April 2002 observation that Plaintiff continued to drink alcohol even with her alcoholic liver disease;
- Dr. Zhang's November 25, 2003 opinion that Plaintiff should stop drinking;

- Plaintiff's treatment for alcohol abuse from the Department of Behavioral Health and Psychiatry's Substance Abuse Services at Trinitas hospital;
- Dr. Patel's June 13, 2005 statement that Plaintiff continued to drink alcohol and abused alcohol socially;
- Dr. Shah's July 2005 alcohol abuse diagnosis and recommendation of an alcohol abuse program;
- Plaintiff's various hospitalizations arising from her alcohol abuse; and
- Treatment notes from September 2005 indicating that Plaintiff's alcohol consumption was a "frequent."

(See R. at 313, 318, 355, 386, 412-13, 444, 447, 488, 496.)

For these reasons, the Court finds that the ALJ's determination that alcohol was a contributing factor material to Plaintiff's disability was based on substantial evidence. Therefore, the Court affirms the ALJ's decision in this respect.

2.  Vocational Expert Testimony

The next issue presently before the Court is whether the ALJ improperly evaluated Plaintiff's non-exertional restriction by relying solely on the grids and failing to produce a vocational expert. As noted above, when determining the availability of jobs for plaintiffs with exertional and non-exertional impairments, an ALJ must utilize testimony of a "vocational expert or other similar evidence, such as a learned treatise," to establish whether the plaintiff's non-exertional limitations diminish his residual functional capacity and ability to perform any job in the nation. Sykes, 228 F.3d at 273. Thus, unless the ALJ can point to an applicable Social Security Ruling (SSR) that relates to the exact non-exertional impairment that Plaintiff suffers, the ALJ must produce vocational evidence such as the testimony of a vocational expert. See id. Additionally, if the ALJ uses a SSR in lieu of a vocational expert, he must include a statement explaining what effect the non-exertional limitation has on the Plaintiff's occupational job base.

In the present case, the ALJ relied on a SSR; he did not use a vocational expert. But, the ALJ did not explain how the SSR specifically addresses Plaintiff's non-exertional limitations. He also did not provide advance notice of his intent to rely on the SSR and did not articulate the relevance of the SSR to his final decision, which is required when advance notice is not provided. Allen v. Barnhart, 417 F.3d 396, 408 (3d Cir. 2007). In light of the foregoing, the Court finds that the ALJ improperly relied on the grids to render his decision and should have either used the testimony of a vocational expert to evaluate the relevance of Plaintiff's non-exertional disability or more adequately explained his failure to do so. Thus, the Court remands this matter for use of a vocational expert or further explanation as to why a vocational expert is unnecessary.

### IV.   CONCLUSION

For the reasons set forth above, this Court finds that Plaintiff did not fulfill her burden of proving that her alcohol abuse was not a contributing factor material to her disability. The Court finds that the ALJ's determination that Plaintiff's alcohol abuse was material to her disability is supported by substantial evidence. But, the Court also holds that the ALJ erred in failing to use a vocational expert at step five of the sequential analysis. Therefore, the Court remands this matter for further consideration in accordance with this Opinion. An appropriate Order accompanies this Opinion.


DATED: September 29, 2010        /s/ Jose L. Linares
                                 JOSE L. LINARES
                                 UNITED STATES DISTRICT JUDGE